## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN

In the matter of:

LESLIE F. KING,
On Behalf of Herself
and All Others Similarly Situated

        Plaintiff,                 Case No.

v.                                   Hon.

                                      PROPOSED CLASS ACTION

MONEY RECOVERY NATIONWIDE
and NATIONWIDE
COLLECTION AGENCIES, INC.,

         Defendant(s).

_____/

## PLAINTIFFS' CLASS ACTION COMPLAINT

The Plaintiff, Leslie F. King  ("Plaintiff"), by and through her attorneys, the Law Offices of Nicholas A. Reyna P.C., and on behalf of all others similarly situated, alleges the following **by way of this Class Action Complaint:**

### Nature of Action

1.  Plaintiff brings this action against the Defendant debt collectors, seeking damages and equitable relief, to redress the Defendant's systemic violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* , violations of the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251 *et seq*, and the Michigan Occupational Code, M.C.L. § 339.901 ("MOC").

2.  Upon information and belief, the Defendants systematically reports following the discharge of the class members' bankruptcies to credit reporting agency Equifax Information Services LLC that the class members continue to owe a current balance on discharged debt.

3.   The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation.  The Sixth Circuit has held that whether a debt collector's conduct violates the FDCPA should be decided from the standpoint of the "least sophisticated consumer."  *Harvey v. Great Seneca Fin. Corp*., 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Kistner v. Law Offices of Michael P. Margelefsky,* LLC, 518 F.3d 433, 438 (6th Cir. 2008).

4.   To prohibit deceptive practices, the FDCPA at 15 U.S.C. §1692e outlaws the use of false, deceptive, and misleading collection efforts.  Among the per se violations thereof are:  false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A) as well as the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

5.   Furthermore, to prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and provides a non-exhaustive list of certain per se violations of unconscionable and/or unfair collection conduct.  15 U.S.C. § 1692f(1)-(8).

6.   The MCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for collecting a consumer debt.  *McKeown v. Mary Jane M. Elliott P.C.,* No. 07-12016-BC, 2007 WL 4326825, at *5 (E.D. Mich. Dec. 10, 2007 (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc*. 126 B.R. 422, 426 (D.Del. 1991)) held that § 445.252(e) applies to Defendants such as these and utilizes an analysis  similar to that under 1692e of the FDCPA, both of which

bar misleading and/or deceptive communications, and otherwise deems it appropriate to view claims such as the Plaintiff's under the same "least sophisticated consumer" standard.

7. The Plaintiff on behalf of herself and all others similarly situated seeks statutory damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court pursuant to the FDCPA, MCPA, and all other common law or statutory regimes.

8. Plaintiff alleges a class-claim under 15 U.S.C. 1681g(a)(2). The Plaintiff now seeks to represent a class of similarly-situated consumers

**Parties**

9. Plaintiff Leslie F. King ("King") is a citizen of Michigan residing in the city of Grand Rapids.

10. Defendant Money Recovery Nationwide ("MRN") assumed name of Nationwide Collection Agencies, Inc. is a domestic profit with a registered agent in Michigan is CSC- Lawyers Incorporating Service located at 601 Abbot Road in East Lansing, Michigan 48823. The Defendant is engaged in the business of servicing debt and purchasing and collecting defaulted and charged off consumer debts. The Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debt. The Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The Defendant is a "regulated person" as the term is defined and used in the RCPA, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a (6). Upon information and belief, MRN is an assumed name by which Nationwide Collection Agencies, Inc. engages in at least

some of its' collection-based activities.

11. Defendant Nationwide Collection Agencies, Inc. is a Domestic Profit Corporation whose registered agent in Michigan is CSC- Lawyers Incorporating Service located at 601 Abbot Road in East Lansing, Michigan 48823. The Defendant is engaged in the business of purchasing and collecting defaulted and charged off consumer debts. The Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debt. The Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The Defendant is a "regulated person" as the term is defined and used in the MCPA, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

### Jurisdiction and Venue

12. This Court has jurisdiction under 15 U.S.C. 1692 et seq (FDCPA) and 28 U.S.C. 1331 and 1337. This Court has supplemental jurisdiction regarding the Defendant's state law claims under 28 U.S.C. 1367. Declaratory relief is available pursuant to 28 U.S.C.§§ 2201, 2202. Venue in this jurisdiction is proper pursuant to 28 U.S.C. 1391(b) because the Defendant transacts business here, the pertinent events took place here, and the Plaintiff resides here.

### Factual Background

13. On November 23, 2016, Ms. King filed a Chapter 7 bankruptcy case in the Western District of Michigan, case number 16-05908 (*see Exhibit A*). At the time of Ms. King's bankruptcy filing, the obligations ("Debt") due and owing to creditor Money Recovery Nationwide was scheduled as a part of Ms. King's bankruptcy (*see Exhibit B*). As a result, the creditor received actual notice of the Ms. King's bankruptcy filing by

mail around that time at their 8155 Executive Drive addresses in Lansing, Michigan (*Exhibit B*).

14. Ms. King's Chapter 7 bankruptcy case was ultimately discharged on March 16, 2017 (*see Exhibit C*).

15. A notice of Ms. King's bankruptcy discharge was subsequently mailed to all of the Plaintiff's creditors who had been included on the Plaintiff's filed creditor matrix, specifically including Defendant Money Recovery Nationwide at the above-referenced address.  In addition, the Defendants did not obtain relief from the "automatic stay" codified at 11 U.S.C. 362 et seq. while the Plaintiff's Bankruptcy was pending to pursue Ms. King for any personal liability.  Accordingly, the debts owed by Ms. King to the Defendants were discharged through her bankruptcy.

16. Furthermore, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any creditor of Ms. King (such as the Defendants) to report any post-Bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, up to and including the initial Petition for Relief for Bankruptcy protection (the "Petition").

17. On or around March 28, 2017, Ms. King obtained a copy of her credit report provided by Equifax Information Systems, LLC, which revealed that despite the discharge of the relevant debt previously owed to the Defendants, the Defendants nevertheless continued to report various current balances as remaining presently due and owing on the various accounts, with no reference being otherwise made to the Plaintiff's bankruptcy discharge and/or the fact that the debts at issue were subject to same, instead offering merely "ADDITIONAL INFORMATION- Bankruptcy Chapter 7" within each

account designation despite the report itself clearly delineating specific to the bankruptcy "Current Disposition- Discharged" (*see Exhibit D*).

18. Post-bankruptcy, the Defendants' reported as of 3/2017 that respective balances on three separate accounts held by it in the name of Ms. King remained **$170.00, $171.00, and $135.00** with all three accounts reporting a date of first delinquency of 8/2015, all done in clear contravention of the required reporting of these discharged accounts following the conclusion of Ms. King's bankruptcy case.

19. The debt purportedly owed by each of the above-referenced Plaintiff was related to personal, family or household purposes and is therefore representative of "consumer debt" as that term is defined by 15 U.S.C 1692a(5).

20. As a result of the foregoing, the Defendants named herein either reported or caused to be reported inaccurate information after the discharge of Ms. King's bankruptcy.

21. The Defendants' reporting, post-Bankruptcy, of derogatory information specific to Ms. King as inaccurate and misleading in that the Defendant continued reporting information based upon the Defendants' pre-bankruptcy contract terms with the Plaintiff which were no longer enforceable once Ms. King's bankruptcy had been filed, thereby rendering the disputed information effectively "inaccurate."

22. Additionally, the Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards, which provide clear and unassailable guidance for both credit reporting and general FCRA compliance.

23. The only logical difference between reporting a pre-discharged debt and a discharged debt is to delete the balance (or report a balance of $0). *Id.*

24. In fact, the guidelines established by those referenced standards direct furnishers to report an account status as it existed at the time the bankruptcy filed and not the account status as it would have existed in the months following the filing of the petition if the petition had not been filed. *Id.*

25. The actions of the Defendants in this regard evince a clear pattern and overriding scheme specific to the reporting of debt discharged as a part of debtors' prior bankruptcy filings, which often amounts to duplicative reporting amounting to slander by way of the credit reports then prepared and provided to third party credit granting entities which indicate current balances due and owing to the Defendants on demonstrably discharged debt(s).

26. The Fair Debt Collection Practices Act ("FDCPA") is a consumer protection statute that "imposes open-ended prohibitions on false, deceptive, or unfair debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587. 130 S.Ct. 1605, 1615 (2010).

27. The Fair Debt Collection Practices Act states that it is unlawful for a debt collector to use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

28. Specific to the case at hand, the FDCPA states that it is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. §1692e(2)(A).

29. Additionally, the FDCPA states that it is unlawful for a debt collector (such as the Defendants) to communicate to any person/entity (such as Equifax) credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

30. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt (such as, for example, implying a current balance remains due and owing to it specific to debt which was discharged in bankruptcy). 15 U.S.C. § 1692e(10).

31. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt (as by representing to credit reporting agencies and by extension credit furnishers that a current balance remains on discharged debt previously owed to it). 15 U.S.C. § 1692f(1).

32. Additionally, a credit report is "inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Poore v. Sterling Testing Systems, Inc.,* 410 F.Supp.2d 557 (E.D.Ky. 2006) See also *Dickens v. Trans Union Corp*., 18 F.App'x 315, 318 (6th Circ. 2001).

33. It has been clearly established that the reporting of a debt to a credit reporting agency by a debt collector is a communication to which the FDCPA applies. See *Daley vs. A & S Collection Assocs., Inc*., 2010 WL 2326256 (D. Oreg. 2010); *Akalwadi v. Risk Mgmt Alternatives, Inc.,* 336 F.Supp.2d 492, 503 (D. Md. 2004).

34. Entities like the Defendants use credit reporting as a way to induce consumers to pay their debts- as the Federal Trade Commission has established, "[D]ebt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." Federal Trade Commission, Staff Opinion Letter, 1997 WL 33791232 at *1 (December 23, 1997)

35. The Defendants collect and attempt to collect defaulted debts incurred or alleged to have been incurred for personal, family, or household purposes on behalf of

8

itself and other debts using the U.S. mail, telephone, and Internet.  As a result, the Defendants at all times relevant to this complaint engaged in the act and/or practice of "debt collection" as that term is defined by MCL 445.251(b); a "debt collector" as defined by 15 U.S.C. § 1692a(6); and/or a "collection agency" as that term is defined by MCL 445.251(b).

36. By way of its' post-discharge collection actions, the Defendants violated the FDCPA, 15 U.S.C. §§ 1692e and 1692e(2)(A), (8), and (10), and 1692f(1).  See, e.g., *Watkins v. Peterson Enterprises, Inc*., 57 F.Supp.2d 1102 (E.D. Wash. 1999).

37. Specifically, the Defendant violated the FDCPA by continuing to communicate to Equifax Information Systems, LLC that Ms. King owed amounts to it which were presently due and owing when it was aware **no** such amounts were in fact owed, 15 U.S.C. §§ 1692e and 1692e(2)(A), (8), and (10), and 1692f(1).  *Id.*

38. The FDCPA is a strict liability statute and thus proof of <u>one</u> violation thereof is sufficient to support a finding of summary judgment in favor of a Plaintiff.  *Cacace v Lucas,* 775 F. Supp. 502, 505 (D. Conn. 1991).  Moreover, a plaintiff in such instances does not need to prove knowledge or intent.  *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011).  The Plaintiff also does not have to have suffered actual damages.  *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 437 (6th Cir. 2008).

39. The described acts and omissions of the Defendants were done in connection with efforts to collect non-existent debt from the Plaintiff, such having been done intentionally and willfully.

40. As a direct and proximate result of the Defendants' negligence, the Plaintiff

suffered actual damages in the form of anger, anxiety, emotional distress, frustration, upset, and embarrassment.

41. As a further direct and proximate result of the Defendants' negligence, the Plaintiff has sustained consequential damages, including attorney fees and legal expenses.

### Conclusions of Law

42. Pursuant to 11 U.S.C. §524(a)(1), a discharge in a bankruptcy "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as a personal liability of the debtor."   Subsection (a)(3) specifically holds that a discharge operates as an injunction against the commencement or continuation of an action…to collect, or recover from, or offset any such debt as a personal liability of the debtor.

43. According to the Sixth Circuit in *In re Madaj*, 149 F. 3d 467 (1998), even an unscheduled debt, which is a debt that was not expressly listed in the debtor's bankruptcy case, is still dischargeable in a "no-asset" case.

44. This Circuit has previously held that the omission of the bona-fide error defense in this state but otherwise available as an affirmative defense in other jurisdictions, thereby allowing debt collectors to show that their violation was unintentional, signifies Michigan's specific intent to avoid absolving debt collectors of liability, even for *unintentional* mistakes.  *Gamby v. Equifax Information Services, LLC*, 2010 U.S. Dist. Lexis 1157, 1165 (E.D. Mich. Jan. 7, 2010).

45. Moreover, even under the FDCPA, outside of the relatively narrow bona-fide error exception, even a good-faith error can still give rise to liability.  More specifically, prior cases have held that a creditor violated § 1692e by improperly seeking payment of a

debt already discharged in bankruptcy. *Turner v. J.V.D.B. & Assocs., Inc.,* 330 F. 3d 991, 995 (7th Cir. 2003). As a result, the plain language of the MCPA and cases interpreting the FDCPA show unequivocally that it is immaterial whether a party such as the Defendant knew its statements were false or misleading at the time they seek repayment on a debt discharged as a part of a prior bankruptcy filing.

## COUNT I- VIOLATION OF 15 U.S.C. 1692e set eq.

46. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

47. This jurisdiction is reliant upon the "least sophisticated debtor" standard to determine whether a communication might effectively deceive an unsophisticated consumer under 15 U.S.C. 1692. *Smith v Computer Credit*, 167 F.3d 1052 (6th Cir. 1999). More specifically, "the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Federal Trade Commission v Standard Education Society*, 302 U.S. 112, 116, 50 S.Ct. 113, 115, 82 L.Ed. 141 (1937). It seems sensible to suggest that the reporting by the Defendants of discharged debt(s) as nevertheless currently due and owing by a debtor such as Ms. King would certainly possess the potential to confuse less sophisticated debtors like the Plaintiff, which it in fact did.

48. For a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). It is additionally important to note that an "explicit demand for payment" is not always necessary for the statute to apply. *Gburek v. Litton Loan Serv. LP,614 F.3d 380* , 385 (7th Cir.2010). All

communications from the Defendants, their agents, and representatives to the Plaintiff, both orally and in writing, shared the same animating purpose- to convince both the Plaintiff, Equifax, and/or third party granting entities reviewing the credit report of the Plaintiff that she continued to owe balances to the Defendant, which she in fact no longer did.

49. The Defendants violated the above-referenced subsections of 15 U.S.C. § 1692e by falsely representing the character, amount, or legal status of Ms. King's Debts previously owed to them, by effectively attempting to collect those debts otherwise discharged at the conclusion of Ms. King's case, mischaracterizing that debt as presently due and owing following the filing of her bankruptcy case when such was a mistruth, and/or not properly or clearly conveying that information to either the Plaintiff or relevant third parties such as Equifax.

50. Generally, an action under the FDCPA accrues "when a communication violating the FDCPA is sent." *Akalwadi v. Risk Mgmt. Alts., Inc*., 336 F.Supp.2d 492, 501 (D. Md. 2004). Furthermore, the phrase "in connection with the collection of any debt" is intended to encompass more than simply a debt collector's demands for payment made to the consumer. *Simon v. FIA Card Servs., N.A., 732 F.3d 259, 266* (3d Cir. 2013); *Grden v. Leikin Ingber & Winters PC,* 643 F.3d 169, 173 (6th Cir. 2011). Thus, the Defendants committed a continued violation of the FDCPA from its' initial post-discharge communications to Equifax Information Systems, LLC indicating a current balance owed by Ms. King up through the present date. By communicating false and deceptive information to the Plaintiff, her counsel, and or Equifax, the Defendant clearly operated in contravention of the referenced statute.

51. The Defendant violated 15 U.S.C. § 1692e(2)(A) by using a false representation of the amount of the debt for the reasons already stated, more specifically by misreporting information related to the debts at issue purportedly owed by the Plaintiff after having received clear and definitive notice that the debts were in fact included as a part of the Plaintiff's bankruptcy filing and subsequently discharged at the conclusion of her case.

52. The Defendant violated 15 U.S.C. § 1692e(8) by communicating to Equifax Information Systems, LLC credit information regarding the Plaintiff which it knew or which it should have known to be false, including failing to communicate that the debts at issue were included and subsequently discharged as a part of the Plaintiff's underlying bankruptcy case.  The Defendant's false verification of the discharged debts no longer owed by the Plaintiff  as remaining due was "false, deceptive, or misleading" because the Defendant had received clear and unequivocal notice that the debts were in fact discharged as a part of the Plaintiff's bankruptcy filing but made no attempt to relay that information to Equifax on behalf of Ms. King, and in fact deceptively communicated that various balances were owed to it by Ms. King when it was fully aware such was not the case.

53. The Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect the debt at issue for the foregoing reasons.   More specifically, to determine if a communication is in connection with the collection of a debt, the court must focus on `the capacity of the statement to mislead; evidence of actual deception is unnecessary'" because the FDCPA is a strict liability statute. *United States v. Nat'l Fin. Servs.*, Inc., 98 F.3d 131, 139 (4th Cir. 1996).  Any creditor or other entity

privy to the credit reporting of Ms. King's account through Equifax Information Systems, LLC would be led to the false impression that Ms. King in fact continued to owe various balances to the Defendant when she clearly and demonstrably did not.

54. Generally, the FDCPA permits recovery of actual damages for emotional distress.  More specifically, pursuant to 15 U.S.C. § 169k(a)(1), "any debt collector who fails to comply with the FDCPA with respect to any person is liable to such a person in an amount equal to the sum of…any actual damages sustained by such person as a result of such failure."  Commentary to the FDCPA goes on to state that such actual damages for FDCPA violations include "damages for personal humiliation, embarrassment, mental anguish, or emotional distress," as well as "out-of-pocket" expenses."  Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13 1988). See also *Beeker v. Montgomery, Lynch*, 2003 WL 23335929 at 2 (N.D. Ohio) (FDCPA permits recovery of actual damages for emotional distress).

55. Districts within the Sixth Circuit including the Northern District of Ohio have concluded that the FDCPA does not require a plaintiff to satisfy the state law elements of intentional or negligent infliction of emotional distress to recover actual damages for such under 15 U.S.C. § 1692k(a). *Id* at 2.  See also *Minick v. First Federal Credit Control, Inc*. 1981 U.S. Dist. LEXIS 18622, at 3-4 (N.D. Ohio).  "Actual damages for emotional distress can be proved independently of state law requirements" for intentional or negligent infliction of emotional distress. *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 188 (D. Del. 1991).  In addition, courts have previously concluded that a party may prove actual damages for emotional distress purely through his or her own testimony.  *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004).

56. Moreover, under the FRCA, actual damages may include economic damages and damages for "humiliation and mental distress." *Bryant v. TRW, Inc.,* 487 F. Supp. 1234, 1239-40 (E.D. Mich. 1980).  The court in that instance instructed the jury to consider mental anguish, embarrassment, and humiliation in determining the proper measure of actual damages to award the victim of a FRCA violation. *Id* at 1239.  Such is particularly important given that the damages standard under the FRCA has been looked to when determining the appropriate standard under the FDCPA. *Smith* at 187.

57. As an actual and proximate result of the acts and omissions of the Defendant, the Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, anxiety, for which the Plaintiff should be compensated in an amount to be established by jury and at trial.

58. As a result of each of the Defendant's violations of the FDCPA, the Plaintiff is specifically entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant.

### COUNT II- VIOLATION OF THE MICHIGAN OCCUPATIONAL CODE

59. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

60. The Defendants each represent a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

61. Each Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

62. The foregoing acts and omissions of the Defendant and their agents

constituted numerous and multiple violations of the MOC including but not limited to each and every one of the above-cited provisions of the MOC, M.C.L. § 339.911 with respect to the Plaintiff.

63. The Defendants violated M.C.L. §339.915(e) for the foregoing reasons.

64. The Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method(s) to collect a debt, by specifically indicating Ms. King owed current balances on various accounts which she had discharged as a part of her prior bankruptcy filing.

65. The Defendants violated M.C.L. 339.915(q) by failing to implement a procedure designed to prevent each of the above-listed MCPA violations by the Defendant's employees, more specifically by failing to abide by the requisite Consumer Data Industry Association Metro 2 reporting standards, which in turn amounted to the Defendants effectively reporting each account's status as it would have existed in the months following the filing of Ms. King's petition rather than the true status of each account as it existed at the time of her bankruptcy filing.

66. The Defendant's foregoing acts in attempting to collect the alleged debt at issue violated MCL § 339.915e, which prohibits a Licensee from "making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt." Reporting current balances on Ms. King's discharged accounts represents the height of inaccurate, misleading, untrue, and/or deceptive statements in this regard.

67. The Defendant's foregoing acts in attempting to collect this alleged debt

violated MCL 339.915f, which prohibits a Licensee from "misrepresenting in a communication with a debtor any of the following: (i) the legal status of a legal action being taken or threatened and/or (ii) the legal rights of the creditor or debtor."

68. The Defendant's violations of the Michigan Occupational Code were willful.

69. As an actual and proximate result of the acts and omissions of the Defendants, the Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, anxiety, loss of sleep and suffering.

70. More specifically, due to the Defendants' willful violations of the MOC, the Plaintiff is entitled to actual damages above $50.00 pursuant to M.C.L. § 339.916; statutory damages in an amount up to $150.00 pursuant to M.C.L. § 339.916; and reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916.

### COUNT III- VIOLATION OF THE MICHIGAN COLLECTION PRACTICES ACT

71. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

72. The Defendants each represent a "Regulated Person" as that term is defined in the Michigan Collection Practices Act ("MCPA"), at MCL § 445.251.

73. Plaintiff is a "Consumer" as that term is defined at MCL § 445.251.

74. The foregoing acts and omissions of the Defendants and their agents constituted numerous violations of the MCPA.

75. The Defendants violated M.C.L. § 445.252(a) by communicating with the Plaintiff in a misleading or deceptive manner and by subsequently misrepresenting the exact amount owed by the Plaintiff, specifically by communicating to Equifax (and by

extension any third party credit-granting entity who might have reviewed the report subsequently authored by Equifax) that Ms. King's accounts through the Defendant remained presently due and owing rather than discharged through bankruptcy.

76. The Defendants violated M.C.L. § 445.252(e) for the foregoing reasons.

77. The Defendants violated M.C.L. 445.252(n) by using a harassing, oppressive, and/or abusive method(s) to collect the debt at issue, specifically by insinuating Ms. King still owed various amounts to the Defendants which were demonstrably discharged as a part of her prior bankruptcy filing.

78. The Defendants violated M.C.L. 445.252(q) by failing to implement a procedure designed to prevent each of the above-listed MCPA violations by the Defendant's agents and/or employees, more specifically by failing to abide by the requisite Consumer Data Industry Association Metro 2 reporting standards, which in turn amounted to the Defendants effectively reporting each account's status as it would have existed in the months following the filing of Ms. King's petition rather than the true status of each account as it existed at the time of her bankruptcy filing.

79. The Defendants' foregoing acts in attempting to collect these alleged debts violated MCL 445.252e, which prohibits a Regulated Person from "making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt." Reporting current balances on Ms. King's discharged accounts represents the height of inaccurate, misleading, untrue, and/or deceptive statements in this regard.

80. The Defendants' foregoing acts in attempting to collect these alleged debts

violated MCL §445.252f, which prohibits a Regulated Person from "misrepresenting in a communication with a debt any of the following:  (i) the legal status of a legal action being taken or threatened and/or (ii) the legal rights of the creditor or debtor."

81. The Defendants, specifically by way of the communications between its' agents and representatives and the Plaintiff, Equifax, and/or any third party credit-granting authority reviewing Ms. King's report, clearly misrepresented to all three the legal rights of the Plaintiff.

82. These violations of the MCPA were willful, and as a result the Plaintiff is entitled to actual damages above $50.00 pursuant to M.C.L. § 445.257; statutory damages in an amount up to $150.00 pursuant to M.C.L. § 445.257; and reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257.

## COUNT IV- CLASS ACTION ALLEGATIONS

83. Plaintiff incorporates by reference the aforementioned allegations as if restated fully herein word for word.

84. This action is brought as a class action.  Plaintiffs bring this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

85. The Plaintiff seeks to certify a single class as set forth below.

86. The Plaintiff proposes a class comprised of persons with FDCPA claims against the Defendants and is defined to include (a) each and every natural person who filed and was subsequently discharged from bankruptcy in a lawsuit filed in any Michigan court, in an attempt to collect a debt incurred by the person for personal, family or household purposes where a judgment was ultimately entered; (b) who owed a debt to

the Defendants which was scheduled as a part of their underlying bankruptcy case and were thusly discharged at the time of each class members' date of bankruptcy discharge; (c) where the debt(s) previously owed to the Defendants was/were subsequently reported post bankruptcy discharge by the Defendants to Equifax (and by extension any third party credit granting authority reviewing the report subsequently authored by Equifax utilizing the information supplied to it by the Defendants) as possessing an existing balance currently due and owing.

87.  The identities of all class members are readily ascertainable from the business records of the Defendants; upon information and belief, the class consists of more than 1,000 persons.

88. Excluded from the Plaintiff Class is the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and each of their respective immediate families, and legal counsel for all parties to this action and all members of their respective immediate families.

89. The Plaintiff's claims are typical of the class members, as all claims are based upon the same facts and legal theories.  Plaintiff's claims and the claims of all class members are based on the same factual and legal theories.  Moreover, the Plaintiff and all class members have suffered the same or similar injury, loss, and damage, all caused by Defendants' false, deceptive, misleading, inaccurate and untrue misrepresentations.

90. The Plaintiff will fairly and adequately protect the interests of the Plaintiff Class defined in this complaint.  The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them to not vigorously

pursue this action.

91. This action has been brought, and may be properly maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

92.  (a)  **Numerosity**- The Plaintiff is informed and believes and on that basis alleges that the Plaintiff Class defined above is so numerous that joinder of all members would be impractical.  The names and addresses of the Class members are identifiable through documents maintained by the Defendants, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

(b)  **Common Questions Predominate**- Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members, including (i) whether the Defendants provided a consumer report which reported a judgment without first fully investigating the public records to determine if those judgments had been effectively discharged as a part of the Plaintiff's prior bankruptcy filings; (ii) whether the Defendants knowingly and intentionally committed an act in conscious disregard of the rights of the consumer; (c) whether the Defendants' conduct constituted violation(s) of the FCRA.

(c)  **Typicality**- The Plaintiff's claims are typical of the claims of the

class members.  Plaintiff and all members of the Plaintiff Class

have claims arising out of the Defendants' common uniform

course of conduct complained of herein.

(d)    **Adequacy**- The Plaintiff will fairly and adequately protect the

interests of the class members insofar as Plaintiff has no interest

that will prove adverse to the absent  class members.  The

Plaintiff are committed to vigorously litigating this matter.

Plaintiff has also retained counsel experienced in handling

consumer lawsuits, complex legal issues, and class actions.

Neither the Plaintiff nor her counsel has any interest which

might cause them to not vigorously pursue the instant class action

lawsuit.

(e)    **Superiority**- A class action is superior to the other available means

for the fair and efficient adjudication of this controversy

because individual joinder of all members would be

impracticable.  Class action treatment will permit a large number

of similarly situated persons to prosecute their common claims in a

single forum   efficiently and without unnecessary duplication of

effort and expense that individual actions would engender.

93.  Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil

Procedure is appropriate because adjudications with respect to individual members create

a risk of inconsistent or varying adjudications which could establish incompatible

standards of conduct for the Defendants, who collects debt throughout the United States

of America.

94. Certification of a class(es) under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate because the Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to the Plaintiff and Class as a whole.

95. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

96. Depending upon the outcome of further investigation and discovery, the Plaintiff may, at the time of class certification motion, seek to modify the class definition and/or certify a class only as to particular issues pursuant to Fed.R.Civ.P. 23(c)(4).

## DEMAND FOR JUDGMENT AND RELIEF

**WHEREFORE**, based upon the foregoing facts, the Plaintiff respectfully requests the following relief:

(A)     Statutory and actual damages in an amount to be determined by the Court.

(B)     Deletion or correction of any and all accounts being wrongfully reported by the Defendants.

(C)     Statutory costs and attorney fees under the FCRA.

(D)     Injunctive relief, including but not limited to correction of the account.

(E)    Compensatory and/or punitive damages.

(F)    Pre and post-judgment interest as provided by law.

(G)    Any other relief which the Court deems appropriate.

### Demand for Trial by Jury

Plaintiff demands trial by jury.

RESPECTFULLY SUBMITTED,

Date:  May 26, 2017

/s/ Nicholas A. Reyna
Nicholas A. Reyna (P68328)
Attorney for Plaintiff
528 Bridge St., Ste. 1A
Grand Rapids, MI 49504
(616) 235-4444
Nickreyna7@hotmail.com